**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION
www.flsb.uscourts.gov**

In re:

SANDRA GREEN,                                           Case No. 13-29202-RBR

        Debtor.                                            Chapter 7
_____/

KENNETH WELT, as Chapter 7 Trustee
For the bankruptcy estate of SANDRA           Adv. Pro. No. 13-01951-RBR
GREEN,

        Plaintiff,

v.

SANDRA GREEN, ROBERT K. GREEN,
NORMAN GIESE, and MARLENE GIESE,

        Defendants.
_____/

**PLAINTIFF, KENNETH WELT'S MOTION FOR SUMMARY
JUDGMENT AND BRIEF IN SUPPORT**

     Plaintiff, Kenneth Welt (the "Trustee"), by and through undersigned counsel, pursuant to Fed.R.Bank.P 7056, hereby moves this Court for entry of summary judgment in his favor and against Defendants, Sandra Green ("Sandra" or the "Debtor"), Robert K. Green ("Robert"), Norman Giese ("Norman"), and Marlene Giese ("Marlene") as to Counts I and III of the complaint filed on December 22, 2013 [ECF No. 1] (the "Complaint"), and in the alternative, Counts I and IV, and in support thereof, states as follows:

**INTRODUCTION**

     This is a simple action in which the Debtor's parents loaned the Debtor and her husband

approximately $165,000.00 in 2002. From 2002 to 2012, the Debtor's parents were unsecured creditors. In 2012, when the Debtor and her husband could no longer pay their bills, they entered into a forbearance agreement with the Debtor's parents where they continued making reduced payments, and a mortgage was recorded against the Debtor's homestead. Less than a year later, the Debtor filed for relief under Chapter 7. The Trustee requests this Court grant summary judgment, avoid the grant of the lien and the payments made within the preference period, and enter declaratory judgment enabling the Trustee to administer the homestead or alternatively preserve the lien for the Estate.

The exhibits and the Affidavit of the Debtor conclusively establish that no genuine issues of material facts exist because Defendants have received an avoidable preference as a matter of law.

### I.   **Factual Background**

1. Sandra is a debtor under the provisions of Chapter 7 of title 11 of the United States Code (the "Bankruptcy Code"), having filed a voluntary petition thereunder on August 13, 2013 (the "Petition Date"). The case (the "Bankruptcy Case") is pending before the United States Bankruptcy Court for the Southern District of Florida as case number 13-29202-RBR. [Bankruptcy Case, ECF No. 1] (the "Petition").

2. The Trustee is the duly appointed and authorized trustee of the Debtor's Chapter 7 bankruptcy estate.

3. The Debtor and Robert own the real property at 3 Sunset Lane, Pompano Beach, FL (the "Real Property") as husband and wife.

4. Norman and Marlene are the Debtor's father and mother, respectively.

5. On or about July 1, 2002, the Debtor and Robert executed and delivered a promissory note (the "Note") in favor of the Norman and Marlene in the original amount of $165,800.00. A copy of the Note is attached as Exhibit A.

6. Beginning on or about March 15, 2012, the Debtor and Robert were unable to pay their bills as they came due.

7. Accordingly, on or about March 15, 2012, Debtor, Norman and Marlene entered into a forbearance agreement (the "Forbearance Agreement.") A copy of the forbearance agreement is attached as Exhibit B.

8. On or about November 5, 2012, ten months prepetition, Norman and Marlene recorded a mortgage (the "Mortgage") on the Real Property, to secure the Note executed ten years prior.

9. According the Debtor's Schedules, the Debtor and her husband have approximately $130,000 in joint debts. Thus, up to $130,000.00 in tenants-by-entireties ("TBE") property is nonexempt, and would be administered by the Trustee. *See Agreed Order Sustaining Trustee's Objection to Debtor's Claim of Exemption* [Main Case, Case No. 13-29202, ECF No. 37].

10. On or about September 24, 2013, at the Debtor's meeting of creditors, the Debtor testified as to the circumstances related to these events (the "341 Meeting"). A copy of the audio recording of the 341 Meeting is attached as Exhibit C.

11. On or about November 26, 2013, the Debtor tabulated a summary of the payments made under the Note in the one year prior to the Petition Date (the "Payment Summary"). A copy of the Payment Summary is attached as Exhibit D.

12. Additionally, on or about December 10, 2013, the Debtor executed an affidavit as to the circumstances (the "Green Affidavit"). A copy of the Green Affidavit is attached as Exhibit E.

13. On December 22, 2013 the Trustee filed a four-count Complaint. Count I seeks liability for the preferential transfers to Marlene and Norman. Count III seeks declaratory judgment that the Trustee may administer the Real Property. Count IV alternatively seeks judgment that the trustee is the mortgagee of the avoided mortgage.

## II. STANDARD FOR SUMMARY JUDGMENT

Under Fed.R.Civ.P. 56, made applicable to this adversary proceeding pursuant to Rule 7056, Fed.R.Bankr.P., "[s]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317,322 (1986). In 1986 the Supreme Court decided a trilogy of cases which encourage the use of summary judgment as a means to dispose of claims as to which there should not be facts in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, (1986); *Celotex v. Catrett*, 477 U.S. 317,322 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

Since the primary purpose of granting summary judgment is to avoid unnecessary trials when there is no genuine issue of material fact in dispute, if the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249-250 (citations omitted). Although a court ruling on a motion for summary judgment must consider all the evidence in the light most favorable to the non-movant, "the non-moving party

still bears the burden of coming forward with sufficient evidence of every element that he or she must prove." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1528 (11th Cir. 1987).

In meeting this burden, the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Lewis-Webb v. Qualico Steel Co., Inc.,* 929 F. Supp. 385, 388) (M.D. Ala. 1996); *Wilde v. Fla. Pneumatic Mfg. Corp.,* 941 F. Supp. 1203, 1205 (S.D. Fla. 1996) (emphasis added). Plaintiff must, instead, proffer specific facts -- not conclusions, beliefs or rumors -- to create a genuine issue for trial. *Celotex*, 477 U.S. at 324; *Combs v. Plantation Patterns*, 106 F.3d 1519 (11th Cir. 1997). The non-movant cannot defeat the motion merely by offering insignificant or insubstantial evidence because "there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2511 (1986).

### III.  **MEMORANDUM OF LAW**

Viewing all the operative documents in their totality, it is obvious that Norman and Marlene received avoidable preferential transfers in the form of the Mortgage and the payments made under the Note during the preference period. Accordingly, the Trustee seeks summary judgment as to Counts I and III.

### A. The Evidence Establishes Plaintiff's Undisputed Right to Recovery

The Evidence conclusively shows that:

- The Debtor and Robert own the Real Property as husband and wife. *Petition, Schedule A,* page 8.

- Norman and Marlene are the Debtor's father and mother, respectively. *341 Meeting* at 2:58.

- On or about July 1, 2002, the Debtor and Robert executed and delivered the Note in favor of the Norman and Marlene in the original amount of $165,800.00. *Note,* § 1.

- Beginning on or about March 15, 2012, the Debtor and Robert were unable to pay their bills as they came due and were insolvent. *Petition; Affidavit,* ¶3. *See also*

*Forbearance Agreement*.

- On or about November 5, 2012, ten months prepetition, Norman and Marlene recorded a mortgage on the Real Property, to secure the Note executed ten years prior. *Affidavit*, ¶3. *See also Mortgage* [Attached to *Note* (Exhibit A)].

- During the year prior to the Petition Date, the Debtor's parents received $6,811.12 in payments under the Note from the Debtor and her husband's joint account (the "Bank Payments")[1]. *See Payment Summary*.

- The Debtor and her husband have approximately $130,000 in joint debts. *Petition,* pages 23-25.

B. **The Facts constitute a preference as a matter of law.**

11 U.S.C. § 547(b) provides, in pertinent part, that:

> [The] trustee may avoid any transfer of an interest of the debtor in property—
> 
> (1) to or for the benefit of a creditor;
> 
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> 
> (3) made while the debtor was insolvent;
> 
> (4) made— . . .
> 
> (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> 
> (5) that enables such creditor to receive more than such creditor would receive if—
> 
> (A) the case were a case under chapter 7 of this title;
> 
> (B) the transfer had not been made; and
> 
> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b). The uncontroverted facts establish each of these elements. Accordingly, the Trustee is entitled to summary judgment as to Count I as a matter of law.

---

[1] Collectively the Bank Payments and the recording of the Mortgage are referred to as the "Transfers"

> *i.     The transfers were transfers of interests of the debtor to or for the benefit of a creditor.*

Both the Bank Payments and the recording of the Mortgage constitute "transfers of interests of the debtor." First, they are both transfers. *In re Davis*, 734 F.2d 604, 605 (11th Cir. 1984) (recognizing that it was undisputed that the grant of a lien is a "transfer"). Second, under the common test for whether the Transfers were transfers of *interests of the debtor*, the Transfers meet the standard.

The test for whether the Transfers constitute transfers of *interests of the debtor*, is whether there has been a <u>diminution of the estate</u>. Here, there has clearly been such a diminution.

> Preference litigation focuses upon whether there has been a diminution of the estate. Where a transfer does not diminish the estate because the debtor does not have a sufficient interest in that property, the estate would not have succeeded to the property if the property were in the possession of the debtor on the date the petition was filed. . . .Accordingly, the rationale in the cases that refer to the interest of the debtor in property in preference and post-petition transfer actions appear to be equally applicable to a determination of property of the estate under 11 U.S.C. § 541. *See also Beiger*, 496 U.S. at 59 (noting that "property of the estate" under § 541(a)(1) serves as the postpetition analog to 11 U.S.C. § 547(b)'s "property of the debtor"; and clarifies that the 1984 amendment to § 547(b) substitution of "an interest of the debtor in property for "property of the debtor" was a "clarifying change" that makes the current language in § 547 of "an interest of the debtor in property" and the older language of "property of the debtor" coextensive with "interests of the debtor in property" as that term is used in § 541(a)(1)).

*In re Barefoot Cottages Dev. Co., LLC*, 2009 WL 2842735 (Bankr. N.D. Fla. 2009).

Each of the Transfers diminished the property of the Estate under section 541. First, each of the Bank Payments depleted funds in a joint checking account which would be property of the Estate.[2] Furthermore, the recording of the mortgage depletes the property of the Estate by

---

[2] The Court has already ruled that the Debtor is not entitled to TBE exemptions due to the significant joint debts. [Main Case, ECF No. 37].

converting the Norman and Marlene from unsecured creditors to partially secured creditors.[3] To wit, recording the mortgage would make the otherwise avoidable payments on the Note (the Bank Payments) unavoidable, thus diminishing property of the estate. Accordingly, that transfer also diminishes property of the Estate.

In fact, even if, in the alternative, the conversion of a creditor from unsecured to partially secured does not constitute a "diminution of the estate," a transfer of an interest in *exempt homestead property* to an insider during the preference period still constitutes a transfer of an interest of the debtor under section 547. *In re Levy*, 185 B.R. 378, 386 (Bankr. S.D. Fla. 1995) (holding that while a homestead interest cannot be fraudulently transferred under Florida Law, a preferential transfer of a homestead interest *can* be avoided as a preference, even though the property would not be administered had the transfer not occurred, because the transfer necessarily prefers one creditor over another).

As such, it is clear the Transfers were transfers of interests of the Debtor. Finally, it is clear that such transfers were made to and for the benefit of the Debtor's parents, a scheduled creditor. Accordingly, the Transfers satisfy the first element under Section 547(b).

> ii. **The Transfers were transfers on account of an antecedent debt owed by the Debtor.**

Both the Bank Payments and the recording of the Mortgage were on account of antecedent debts owed by the Debtor. First, a "debt is antecedent if it is incurred before the transfer." *Matter of Southmark Corp.*, 88 F.3d 311, 316 (5th Cir. 1996). Here, as set forth in the Green Affidavit, and evidenced by the Note and Forbearance Agreement, the debt was incurred

---

[3] The Trustee acknowledges that it is universally accepted that an oversecured creditor may receive payments during the preference period without avoidance. Here, however, the Debtor's parents were unsecured as of the beginning of the preference period, and it would be inconsistent with the Bankruptcy Code to allow the perfection of a lien during the preference period (a preferential transfer itself) to "fix" otherwise avoidable transfers.

in 2002. The Transfers occurred ten years later. Accordingly, it is clear that the Transfers were on account of an antecedent debt.

Moreover, the antecedent debts were "owed by the Debtor." "The term 'debt' means liability on a claim. 11 U.S.C. § 101(12). A "claim" includes any "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). There is no question that Norman and Marlene had a right to payment by the Debtor of the amounts due under the Note. The fact that that Robert was *also* liable does not change the fact that the Norman and Marlene had a right to payment from the Debtor, herself. There is little question that if there were a default on the Note, Norman and Marlene could have sued Sandra alone. While they probably would not do so, the example is illustrative in that it shows that the Note, on account of which the Transfers were made, was absolutely an antecedent debt *of the Debtor*.

### iii.    *The Transfers occurred when the Debtor was insolvent.*

Both the Bank Payments and the recording of the Mortgage occurred when the Debtor was insolvent. An entity is insolvent at the time of a transfer if its liabilities exceed its assets at such time. *In re TOUSA, Inc.*, 422 B.R. 783, 859 (Bankr. S.D. Fla. 2009) *quashed in part*, 444 B.R. 613 (S.D. Fla. 2011) *aff'd in part, rev'd in part*, 680 F.3d 1298 (11th Cir. 2012). "In reviewing the debtor's financial condition a bankruptcy court may take judicial notice of the debtor's schedules in order to determine if the debtor was insolvent on the date of the preferential transfer." *In re Trans Air, Inc.*, 103 B.R. 322, 325 (Bankr. S.D. Fla. 1988).

The Debtor's schedules list $889,818.83 in liabilities as of the Petition Date, and only $595,163.76 in assets, a difference of approximately $300,000.00. It follows that, unless the Debtor had $300,000.00 more in assets (or $300,000.00 less in debt, or some combination

thereof) during the one-year period prior to the Petition Date, then she was insolvent at all relevant times during the preference period. Section 10 of Statement of Financial Affairs shows that the Debtor did not make any transfers of property in the two years prior to the Petition. As such, for the Debtor <u>could only</u> be solvent during the preference period if more than $300,000.00 of her debts were incurred during the preference period. That is not the case.

First, the three loans secured by mortgages all predate the beginning of the preference period. *Schedule D,* page 17. Since those loans together total $654,000.00 (and presumably totaled even more during the year prior to the filing), the Debtor is insolvent based solely on those three obligations. Moreover, over $57,000.00 of the unsecured debt listed in Schedule F are for credit cards which the Debtor states were "Last Active" more than one year prior to the Petition Date. Thus, without even determining whether the other unsecured debt existed at the time of the Transfers, it is apparent that the Debtor had <u>at least</u> $711,000.00 in debt, but <u>no more</u> than approximately $600,000.00 in assets.

Paragraph 3 of the Green Affidavit explains that the circumstances surrounding the Forbearance Agreement, which was executed five months prior to the beginning of the preference period, were that the Debtor and her husband were not earning money; were having financial problems; and could not make the required loan payments. *Green Affidavit,* ¶¶ 1 and 3.

Thus, there is absolutely no doubt that the Debtor was insolvent at all times during the 365-day preference period.

      ***iv.    The Transfers were made during the preference period to insiders.***

First, it is clear that the Transfers were made during the year prior to the Petition Date. *See Green Affidavit,* ¶3; *Statement of Financial Affairs*, §3; *Payment Summary.* In order for the one-year period to apply, the payments must be made to an "insider." 11 U.S.C. § 547(b)(4). Norman and Marlene are the Debtor's parents. *Green Affidavit,* ¶1. An insider includes a

"relative of the debtor." 11 U.S.C. § 101(31)(A)(i). Accordingly, Norman and Marlene are insiders, and the one-year preference period applies.

> v. *The Transfers enabled Norman and Marlene to receive more than they would in a liquidation.*

The Transfers unquestionably enabled Norman and Marlene to receive more than they would have received in a chapter 7 case immediately before the Transfers occurred. Other than less than $5,000.00 in scheduled personal property, the Debtor's sole asset was the homestead. The equity in that asset, however, would absolutely be exempt in a liquidation. *Havoco of Am., Ltd. v. Hill*, 255 F.3d 1321 (11th Cir.2001). Accordingly, in such a liquidation, Norman and Marlene would share the nonexempt portion of the personal property with all the unsecured creditors, after payment of administrative costs, etc. Suffice it to say, that they would receive nothing (or almost nothing) in a Chapter 7 liquidation (before the Transfers).

Instead, due to the Transfers (but for this Adversary Proceeding) Norman and Marlene would retain (a) approximately $6,811.12; and (b) a Mortgage on the homestead. In sum, the Transfers enabled Norman and Marlene to receive cash **and** a lien on which they may foreclose and recover a significantly greater portion. The Debtor's schedules show that approximately $80,000 of Norman and Marlene's loan is secured. As such, the Mortgage itself is a valuable asset.

Thus, it is absolutely clear that Norman and Marlene improved their position and received **substantially** more than they would have had the Transfers not occurred and the Debtor filed a chapter 7.

> vi. *There is no material question of fact as to any element of a preference claim.*

Because there is no material question of fact as to any of the five elements of a preference claim, the Trustee submits that he is entitled to judgment as to Count I of the Complaint as a

matter of law. As such, judgment should be entered in favor of the Trustee and against Norman and Marlene for the value of the Bank Payments. Additionally, judgment should be entered avoiding the Mortgage.

### C. Once the Mortgage is avoided, the equity in the Real Property should be administered for the benefit of the Debtor and Robert's unsecured creditors.

Once the Mortgage is avoided, there will be approximately $75,000.00 in equity in the Real Property. Since the Debtor has not claimed the Real Property as exempt on Schedule C, the Property must be administered for the benefit of the Debtor and Robert's joint creditors.

"Under Florida law, entireties property is exempt from process to satisfy debts owed to individual creditors of either spouse. Entireties property is not exempt from process to satisfy joint debts of both spouses." *In re Monzon*, 214 B.R. 38, 40-41 (Bankr. S.D. Fla. 1997) (citations omitted). For this reason, the Court already denied the Debtor's claim of TBE exemption.

"Once the entireties exemption is defeated and the entireties property comes into the estate, the asset is subject to administration under section 704. In order to realize on the asset, the trustee may sell both the estate's interest and the co-owner's interest under section 363(h). The non-exempt, entireties property is subject to distribution under section 726. However, distribution is limited to joint creditors of the debtor and non-debtor spouse." *In re Helm*, 2012 WL 1616791 (Bankr. S.D. Fla. May 9, 2012).

Since the Debtor has joint debts which exceed the value of the equity in the Real Property, such property should be administered by the Trustee. The Debtor's decision not to schedule the Property as exempt is binding on her non-debtor spouse as well. When only one spouse files, "the right to claim exemptions in [marital property which is included in the Estate] vests solely in *that* spouse." *In re Homan*, 112 B.R. 356, 359 (B.A.P. 9th Cir. 1989) (citing 11 U.S.C. § 522(b); 4 Collier on Bankruptcy, ¶ 541.15 at 541–82 (15th ed. 1989)) (emphasis in

original). Here, since the Court has already determined that the TBE property vests in the Estate, up to the extent of the joint debts, the Debtor's decision not to exempt the Real Property under the Florida Constitution is binding.

Furthermore, the Debtor may not amend her schedules to claim the homestead as exempt. In light of *In re Doan*, 672 F.2d 831, 833 (11th Cir.1982), courts generally permit exemption amendments liberally at any time during the case. However, waiting until the Trustee obtains a judgment as to nonexempt property and then claiming an exemption in an attempt to prevent the Trustee from collecting on such a judgment constitutes an exception to the general rule. *In re Wilson*, 446 B.R. 555, 562 (Bankr. M.D. Fla. 2011). In fact, this Court has previously denied an amendment under very similar conditions. *In re Morales*, 381 B.R. 917, 922 (Bankr.S.D.Fla.2008).

As such, the Court should grant summary judgment as to Count III, and permit the Trustee to administer the newly created equity in the Real Property for the benefit of the joint creditors.

**D. Alternatively, the Mortgage should be preserved for the benefit of the Estate.**

If the Court does not grant summary judgment as to Count III, the avoided lien should still be preserved for the Estate. Avoidance of a lien results in the lien's preservation for the benefit of the estate. *Heintz v. Carey (In re Heintz)*, 198 B.R. 581, 584 (9th Cir. BAP 1996); *In re The Greater Southeast Community Hosp. Found., Inc.*, 237 B.R. 518, 522–23 (Bankr.D.D.C.1999); *Kepler v. Weis (In re Weis)*, 92 B.R. 816, 821 (Bankr.W.D.Wis.1988). Such a preservation is automatic. 11 U.S.C. § 551.

The preservation of the lien for the benefit of the Estate results **even though the lien encumbers property the Debtor could claim as exempt.** *In re Bethea*, 275 B.R. 127, 129 (Bankr. D.D.C. 2002).

> Under § 522(c), property exempted generally remains liable for a debt secured by a lien. In re Granati, 271 B.R. 89, 95 (Bankr.E.D.Va.2001) ("[V]alid liens, even against exempt property, pass through bankruptcy and may be enforced against the collateral ...."). Accordingly, § 522 treats a debtor's interest in real property as distinct from a mortgagee's lien on that property. . Unless the debtor specifically listed the lien as being exempted, his exemption of the real property alone did not suffice to claim an exemption of the lien (that upon avoidance by the trustee would be property of the estate and exemptible under § 522(g) if the debtor met certain conditions).

*Id.* at 129-30.

More importantly, perhaps, the Debtor cannot claim the lien as exempt *after avoidance*. This is because 11 U.S.C. § 522 specifically enumerates the limited scenarios in which a debtor may claim avoided property as exempt. It provides, in pertinent part:

> (g) Notwithstanding sections 550 and 551 of this title, the debtor may exempt under subsection (b) of this section property that the trustee recovers under section 510(c)(2), 542, 543, 550, 551, or 553 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if--
>
> (1)   (A) such transfer was not a voluntary transfer of such property by the debtor; and
>
>          (B) the debtor did not conceal such property; or
>
> (2) the debtor could have avoided such transfer under subsection (f)(1)(B) of this section.

11 U.S.C. § 522(g). Neither exception (1) nor (2) applies. Exception (g)(1) does not apply because the transfer was voluntary. *See Green's Affidavit.* Exception (g)(2) is inapplicable as the Mortgage was a lien on real property (and thus outside the scope of subsection (f)(1)(B)). Accordingly, the avoided lien may not be exempted, and is unequivocally property of the Estate.

In *In re Bethea,* the United States Bankruptcy Court for the District of Columbia considered a nearly identical issue. In that case, the Debtor scheduled his homestead as exempt. *Bethea,* 275 B.R. at 127. The homestead was subject to a $114,750.00 lien. *Id.* In applying

sections 522 and 551, the Court held that the Debtor's "exemptions are ineffective to exempt any lien recovered by the trustee." *Id.* at 129. Additionally, the court held that "even if the debtor were to amend his schedule C after the lien is avoided to claim the lien as exempt property, the claimed exemption would be invalid." *Id.* at 133. Finally, the court held that the "that the debtor may not file a claim of exemption of property the trustee avoids under his avoidance power until the trustee has avoided the transfer." *Id.* Based on these three holdings, the court concluded that "the debtor will not be entitled to exempt that lien if such lien is actually avoided by the trustee." *Id.* at 134.

This is purely a question of law. There are no facts in controversy, nor could there be. As such, for these reasons, the Court should, in the event the Court does not grant summary judgment as to Count III, grant summary judgment in favor of the Trustee on Count IV of the Complaint, confirming that the Trustee is the mortgagee of the Mortgage.

## CONCLUSION

WHEREFORE, the Trustee requests this Court enter summary judgment in his favor as to Counts I and III of the Complaint or, alternatively, grant summary judgment as to Counts I and IV, and grant such other and further relief as is just and appropriate.

    Respectfully submitted,

    **MARSHALL SOCARRAS GRANT, P.L.**
    Attorneys for the Trustee
    197 South Federal Highway, Suite 300
    Boca Raton, Florida 33432
    Telephone No. 561.672.7580
    Facsimile No. 561.672.7581
    Email: lpecan@msglaw.com

    By:  /s/ Lawrence E. Pecan
        LAWRENCE E. PECAN
        Florida Bar No. 99086